UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIE D. STEPHENS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | Case No. CV 07-2191-PJW<br><br>MEMORANDUM OPINION AND ORDER |

　　Plaintiff appeals a decision by Defendant Commissioner of Social Security (hereinafter the "Agency"), denying her claim for disability insurance benefits. Plaintiff claims that the administrative law judge ("ALJ") erred when he concluded that she did not have a severe mental impairment. She argues that the ALJ should have accepted an examining psychiatrist's opinion that her mental impairment was severe, instead of a non-examining psychiatrist's opinion that it was not severe. For the reasons set forth below, the Court concludes that the ALJ did not err in finding that Plaintiff's mental impairment was not severe.

1    Plaintiff was born in 1953 and was 52 years old when she
2 testified at the last administrative hearing in this case in March
3 2006. (Administrative Record ("AR") 72.) Plaintiff had worked for 20
4 years in a hospital as a psychiatric technician. (AR 336.) In 1998,
5 she stopped working due to physical injuries incurred on the job. (AR
6 608.) In February 1998, she applied for disability insurance
7 benefits, alleging that she became disabled in January 1998, due to
8 musculoskeletal injuries and stress. (AR 266.) Her claim was denied
9 initially and on reconsideration. She then requested and was granted
10 a hearing before an ALJ. In August 1999, her claim was denied by the
11 ALJ. (AR 266-72.) Plaintiff appealed, but the Appeals Council
12 affirmed the ALJ's decision in July 2000. (AR 281-82.) Plaintiff did
13 not appeal the Appeals Council's decision.
14    In March 2001, Plaintiff filed a new claim, again alleging
15 disability as of January 1998, due to musculoskeletal impairments.
16 (AR 334-43.) Her claim was denied initially and she requested and was
17 granted a hearing before an ALJ. (AR 602-21.) In July 2003, the ALJ
18 denied her claim. (AR 36-48.) In doing so, he determined, among
19 other things, that Plaintiff did not have a severe mental impairment,
20 relying on the opinions of examining psychiatrist Inderjit Seehrai and
21 reviewing psychiatrist Patrick Ryan. (AR 43-44.) Plaintiff appealed
22 to the Appeals Council, which denied review. (AR 8-10.) She then
23 appealed to this Court. In March 2005, the Court reversed the ALJ's
24 decision and remanded the case to the Agency with instructions to
25 reconsider the issue of Plaintiff's mental impairment in light of
26 examining psychiatrist Nader Oskooilar's opinion that Plaintiff had a
27 severe impairment, which the ALJ had failed to mention in his
28 decision. (AR 695-704.)

1      In March 2006, the ALJ held another hearing. (AR 725-37.) In
2 October 2006, he issued a decision, again denying Plaintiff's claim
3 for benefits. (AR 665-71.) This time, he did note that Dr. Oskooilar
4 had concluded that Plaintiff's psychiatric impairment would preclude
5 work, but he gave the opinion no weight because:
6      1.   It was inconsistent with the Global Assessment of
7           Functioning ("GAF") score of 65-70 that Dr. Oskooilar
8           assigned to Plaintiff at the same time that he concluded
9           that Plaintiff had a "moderately significant" psychiatric
10          impairment;
11     2.   It was contradicted by Dr. Abejuela's, Dr. Ryan's, and Dr.
12          Seehrai's opinions that Plaintiff did not have a severe
13          mental or psychiatric impairment; and
14     3.   Plaintiff's treating doctor (an osteopath) reported not
15          having seen any signs or symptoms of a mental impairment and
16          had not referred Plaintiff for mental health treatment.
17 (AR 669-70.)
18     The ALJ concluded at step two that Plaintiff's mental impairment
19 was not severe. Plaintiff argues that this was error. As explained
20 below, Plaintiff's argument is rejected.
21     At step two of the sequential evaluation process, the ALJ is
22 tasked with determining which impairments are severe and which are not
23 severe. 20 C.F.R. § 404.1520(c). Severe impairments are impairments
24 that significantly limit a claimant's ability to perform basic work
25 activities. 20 C.F.R. § 404.1521(a). In the context of a psychiatric
26 impairment, like the one alleged herein, the basic work activities
27 that come into play are:
28

      1.    Understanding, carrying out, and remembering simple instructions;

      2.    Use of judgment;

      3.    Responding appropriately to supervision, co-workers, and usual worker situations; and

      4.    Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Step two is intended to be a de minimus screening test, used to cull out groundless claims. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

There were four psychiatrists, one psychologist, and an osteopath who provided input regarding Plaintiff's mental/psychological health in this case. In April 1998, psychiatrist Reynaldo Abejuela examined Plaintiff at the Agency's request in connection with Plaintiff's prior application. (AR 224-28.) Dr. Abejuela concluded that Plaintiff suffered from mild depression and anxiety. (AR 227.) He found that she also had mild cognitive impairment, but no severe limitations due to mental or emotional problems. (AR 227.)

In June 2001, the Agency sent Plaintiff to psychiatrist Nader Oskooilar for a consultative examination. (AR 510-13.) Dr. Oskooilar diagnosed Plaintiff with depressive disorder, not otherwise specified, and schizo-type personality disorder features. (AR 512.) In Dr. Oskooilar's view, Plaintiff had a moderately significant psychiatric impairment which would interfere with her ability to work. (AR 512.) At the same time, however, Dr. Oskooilar determined that Plaintiff's GAF was 65-70, (AR 512), which suggested that her mental impairment

was not that severe and that it would not interfere with her ability to work.  *See* Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed. (2000) ("DSM-IV-TR") at 34.[1]

In June 2001, Plaintiff's osteopath, Dr. Philip Wunder, completed a form that the Agency had sent him, which included seven questions directed at whether he had witnessed any signs of mental illness while treating Plaintiff over the previous three years.  (AR 483-84.)  Dr. Wunder indicated that he had not seen any such signs and that he had not referred her for mental health treatment.  (AR 483-84.)

In August 2001, the Agency forwarded the medical records to psychiatrist Patrick Ryan and asked him to review them and offer an opinion as to Plaintiff's condition.  (AR 539-52.)  Dr. Ryan filled out a check-the-box form, indicating that Plaintiff did not have a severe psychiatric impairment.  (AR 539-52.)  The explanation he offered for this opinion is cryptic, at best.  (AR 551.)  The Court has labored to interpret his note as follows:

> ALJ decision in 8/99 for non-severe [psychiatric impairment]; no [psychiatric treatment] prior to start date → [more] weight to 6/01 [psychiatric consultative examination] → coherent, spontaneous speech, some _____ of affect despite _____, linear thought process, [mental status section] states some trouble with memory[,] concentration - but not severe.  → _____ objective findings at [consultative examination] and lack of [psychiatric treatment] → do[es] not meet the burden of

---

[1] A score of 61-70 denotes, "some mild symptoms ... but generally functioning pretty well ...."  DSM-IV-TR at 34.

>     rebutting the presumption of continuing non-disability per
>     the ALJ decision.[2]

(AR 551.)

In January 2002, the Agency sent Plaintiff to psychiatrist Inderjit Seehrai. (AR 559-62.) He diagnosed Plaintiff with depression and concluded that she "may" have moderate impairment in completing a normal workday and workweek because of her depression. (AR 562.) He also opined that she would have problems concentrating. (AR 562.) He assigned Plaintiff a GAF score of 65. (AR 562.)

In September 2002, Plaintiff was referred by her treating doctor to psychologist Philip Corrado to develop strategies for dealing with pain. (AR 742-44.) Dr. Corrado noted that Plaintiff reported being depressed, but he did not report any mental or psychiatric impairments. (AR 743.)

Thus, the ALJ was faced with a confusing, conflicting record to sort out to determine whether Plaintiff's mental impairment was severe. One of the examining doctors believed Plaintiff's impairment was not severe (Dr. Abejuela), one believed it was (Dr. Oskooilar), and a third fell somewhere in the middle (Dr. Seehrai). The consulting doctor (Dr. Ryan) clearly believed Plaintiff's impairment was not severe.[3] The ALJ sided with the doctors who concluded that Plaintiff's impairment was not severe. He based this decision on valid reasons, which are supported by substantial evidence in the record, i.e., Dr. Oskooilar's opinion was internally inconsistent and

---

[2] Brackets indicate interpretations by the Court of what it believed Dr. Ryan's symbols and abbreviations were intended to mean.

[3] The psychologist (Dr. Corrado) and the osteopath (Dr. Wunder) did not technically offer opinions on Plaintiff's mental health.

was contradicted by the other doctors' opinions and Dr. Wunder did not observe any signs of a mental impairment.[4]  The ALJ was tasked with resolving conflicts and ambiguities in the medical record, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), and the Court cannot say that he erred here.

Plaintiff sees the evidence differently.  First, it seems, he believes that Dr. Abejeula's report should be ignored because it was completed in 1998 and Plaintiff's amended alleged onset date was August 1999.  (Joint Stip. at 4.)  There is no support in law or fact for ignoring a medical opinion because it was completed before the alleged onset date.  Though Plaintiff might properly argue that less weight should attach to the opinion, the ALJ was right when he took it into account.

Next, Plaintiff has a different interpretation of Dr. Seehrai's opinion than the Court and the ALJ.  (Joint Stip. at 8.)  In Plaintiff's view, Dr. Seehrai determined that Plaintiff had a severe impairment.  (Joint Stip. at 8.)  The Court does not read Dr. Seehrai's opinion to say that.  Though Dr. Seehrai concluded that Plaintiff would have difficulty performing detailed and complex tasks due to her mental impairments, he also found that she would not have any problems performing simple and repetitive tasks.  (AR 562.)  Further, Dr. Seehrai's opinion that Plaintiff "may" have difficulty completing a workday or workweek because of her depression, concentration problems, and sedative medication cannot be read to mean

---

[4] Because Dr. Oskooilar was not a treating physician, the ALJ was not required to contact him to resolve the apparent ambiguity in his report.  *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

that Plaintiff would have these problems, as Plaintiff seems to suggest. (Joint Stip. at 10.) Finally, Plaintiff's interpretation that Dr. Seehrai found that Plaintiff had a severe mental impairment conflicts with Dr. Seehrai's finding that Plaintiff had a GAF score of 65.[5]

Plaintiff takes exception to the ALJ's reliance on Dr. Wunder's observation that Plaintiff did not exhibit signs of any psychiatric problems, arguing that Dr. Wunder was a treating osteopath, not a treating psychiatrist. (Joint Stip. at 18-19.) Though the Court would agree that Dr. Wunder's input did not rise to the level of a treating opinion, it was proper for the ALJ to attach some weight to the fact that Plaintiff never exhibited any signs of a mental impairment when she was with him 19 times over the course of three years.

In addition to the reasons set forth above, the Court's conclusion that the ALJ did not err in finding that Plaintiff's mental impairment was not severe is bolstered by additional evidence in the record. First, Plaintiff never raised a mental impairment in her application for benefits nor did she stop working because of a mental impairment. (AR 334-56.) Second, the ALJ found that Plaintiff was not credible, (AR 669-70), a finding Plaintiff does not challenge. This is important because the doctors' opinions in this case were based primarily on Plaintiff's allegations regarding her symptoms. If

---

[5] Plaintiff argues in her brief that the ALJ's analysis of the GAF scores amounts to a medical conclusion, which, she contends, the ALJ was not competent to make. (Joint Stip. at 20.) The Court does not agree. The GAF score itself, i.e., the number, does not require any specialized training, it is what it is. The meaning of that score is set forth in the DSM-IV-TR in laymen's terms, which ALJs and others can read and understand.

the allegations cannot be believed, the doctors' opinions based on those allegations are suspect. Third, Plaintiff essentially never underwent any mental health treatment. She saw a psychiatrist twice, once when she was getting divorced and once when she was being harassed at work. (AR 510-13.) She also visited a psychologist one time to help manage pain. (AR 742-44.) This lack of treatment reinforces the ALJ's finding that Plaintiff, a psychiatric technician by trade, did not suffer from a severe mental impairment.[6]

Though the Court might have concluded that Plaintiff's impairment was severe had it been tasked with making that call at the administrative level, the Court cannot substitute its judgment for the ALJ's where, as here, the decision is supported by substantial evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). For all these reasons, the Agency's decision is affirmed and the Complaint is dismissed with prejudice.

IT IS SO ORDERED.

DATED: September  23 , 2008.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\STEPHENS, L 2191\Memo_Opinion.wpd

---

[6] Plaintiff testified at the administrative hearing in 2003 that she had been receiving psychiatric care for nine months, and had stopped because she ran out of money. (AR 617.) In the decision that followed, the ALJ rejected this claim because Plaintiff had not submitted any records to substantiate it. (AR 44.) Three years later, and in the face of the ALJ's previous finding regarding the lack of evidence for this treatment, Plaintiff did not produce any evidence to show that she had received this treatment. The Court presumes that she never received psychiatric treatment and her testimony that she did was untrue.